UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Kawana Howard

_____

Write the full name of each plaintiff.

17 CV 364

(Include case number if one has been assigned)

-against-

Consolidated Edison Company of New York, Inc.

Pascale Ambrosio

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes    ☐ No

AMENDED

EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.



Rec'd 7/19/17

## I.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Kawana | | Howard | |
|---|---|---|---|
| First Name | Middle Initial | Last Name | |

| 214 St. Marks Ave. | | | |
|---|---|---|---|
| Street Address | | | |

| Kings County, Brooklyn | NY | 11238 |
|---|---|---|
| County, City | State | Zip Code |

| 646-772-6642 | wana75@msn.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| Consolidated Edison Co. of New York, Inc. | | |
|---|---|---|
| Name | | |
| 4 Irving Place | | |
| Address where defendant may be served | | |
| New York County, New York  NY | | 10003 |
| County, City | State | Zip Code |

Defendant 2:

| Pascale Ambrosio, Department Manager, ConEdison | | |
|---|---|---|
| Name | | |
| Consolidated Edison, 1560 Bruckner Blvd. | | |
| Address where defendant may be served | | |
| Bronx | NY | 10473 |
| County, City | State | Zip Code |

Page 2

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Consolidated Edison Co. of New York, Inc.
_____
Name

4 Irving Place
_____
Address

New York County, New York         NY              10003
_____
County, City                    State              Zip Code

## III.    CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒  race: _____

☐  color: _____

☐  religion: _____

☒  sex: _____

☐  national origin: _____

Page 3

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

   My race is:    African American

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

   I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

   My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

   My disability or perceived disability is: _____

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B.  Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ **Other** (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐  did not hire me

- ☒  terminated my employment

- ☐  did not promote me

- ☐  did not accommodate my disability

- ☒  provided me with terms and conditions of employment different from those of similar employees

- ☒  retaliated against me

- ☒  harassed me or created a hostile work environment

- ☐  other (specify): _____

    _____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

See attached Addendum.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒  Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   July 25, 2015 and August 28, 2015

☐  No

Have you received a Notice of Right to Sue from the EEOC?

☒  Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   May 12, 2016

When did you receive the Notice?   _____

☐  No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐  direct the defendant to hire me

☒  direct the defendant to re-employ me

☐  direct the defendant to promote me

☐  direct the defendant to reasonably accommodate my religion

☐  direct the defendant to reasonably accommodate my disability

☒  direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

reinstatement to former position as Inspector with back pay and front pay, including general and union raises; expungement of disciplinary record; punitive damages; regular anti-sex discrimination training; and whatever other relief this Court deems just and proper.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| July 5, 2017 | _Kawana L Ecu_ |
| Dated | Plaintiff's Signature |
| Kawana | Howard |
| First Name            Middle Initial | Last Name |
| 214 St. Marks Ave., | |
| Street Address | |
| Kings County, Brooklyn        NY | 11238 |
| County, City            State | Zip Code |
| 646-772-6642 | |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☒ No

If you do consent to receive documents electronically, submit the completed form with your
complaint. If you do not consent, please do not attach the form.

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

| | | | |
|---|---|---|---|
| Name (Last, First, MI) | | | |
| 4 Irving Place | | NY | 11238 |
| Address | City | State | Zip Code |
| 646-772-6642 | | | |
| Telephone Number | | E-mail Address | |
| | | | |
| Date | | Signature | |

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

*Kawana Howard v. ConEdison*, 17 cv 364
Addendum to Amended Complaint

1. I am an African-American female, born in July 1975.

2. I earned an Associate's Degree in 2004, a Bachelor's Degree in 2007, and a Master's Degree in Organizational Leadership in 2012.

3. I worked at Defendant Consolidated Edison for 13 years, from 2002 until 2015, when I was terminated.

4. During my employment at Defendant, I faced discrimination on the basis of my race and sex, and retaliation for my participation in an investigation by the NY State AG's office into widespread sex discrimination at ConEdison and retaliation for complaining about a supervisor's racial harassment.

5. **Investigation by AG:** In or about 2010, the NY State Attorney General's Office investigated Defendant for widespread allegations of sex discrimination against female workers. I was a member of this class.

6. Defendant settled the matter with the state AG by agreeing to pay $3.8 million to the class members, except those who opted out.

7. I chose to opt out because I wanted to pursue my rights individually, in federal court.

8. Once Defendant found out that I was participating in the State AG's investigation, I faced numerous incidents of retaliation.

9. In support of my Title VII claims for sex and race discrimination and retaliation, I refer the Court to the attached charges that I filed with the EEOC.

10. **Section 1981 and FMLA:** Around 2013, Pascale Ambrosio, who is a white male, became the Department Manager of the Construction Management Special Project Group ("Construction Management SPG"), in which I was working as an Inspector at the time.

1

11. Mr. Ambrosio subjected me to harassment and discrimination on the basis of my race.

12. Mr. Ambrosio targeted the only other black woman in my group, Claudine Whitehead, as well. Ms. Whitehead transferred to a position upstate.

13. Near the end of May 2014, my supervisor at that time, Quentin Snagg, received an email that I walked out of medical and refused to be seen which was not the case. I refused to be sexual assaulted, by Dr. Jose Jeune, whom required me to remove my shirt to be examined. Christine Lee sent the email without having the facts of what actually happened during my visit. It was stated by numerous personal that Mr. Ambrosio made lie, that I threatened Ms. Lee. Despite Ms. Lee's denial that I had threatened her, and their refusal to allow her to testify during arbitration I was suspended for 10 days.

14. I believe that I was suspended on a false allegation because of my race.

15. White, male employees of Defendant such as Joseph Buscca and Michael Garick have assaulted coworkers on the job and, to the best of my knowledge, were neither suspended nor reprimanded.

16. Mr. Ambrosio targeted me for unfair treatment and unequal conditions of employment on many occasions, because of my race.

17. Mr. Ambrosio also exhibited, through his behavior toward me, animosity on the basis of my race, creating a hostile work environment.

18. Mr. Ambrosio regularly passed me in the office and coldly stared at me in a hostile manner, without saying anything.

19. On or about March 3, 2015, Mr. Ambrosio came in the office and said he was ready to start the meeting, even though my shop steward, whose presence was required, had not

2

yet arrived for the meeting.  Mr. Ambrosio, in a derisive and nasty manner, told me he did not care that my shop steward was absent.

20. I followed Mr. Ambrosio into his office with Jean Washington on the cellphone.  When I did so, he gave me such a malevolent glare that I felt genuinely afraid for my safety.

21. I left Mr. Ambrosio's office to call 911, but somehow called Human Resources Director Vinny Frankel who convinced me not to summon the police.  Mr. Frankel sent corporate security and a business agent Bruce Farina came instead.

22. I was constantly afraid that Mr. Ambrosio would fabricate a reason to fire or discipline me on the basis of my race.

23. For example, Mr. Ambrosio habitually asked my manager about my whereabouts to check on me.  Mr. Ambrosio did not similarly check on the whereabouts of the other 12 Inspectors in my group, 10 of whom were white.  Mr. Ambrosio checked only on me, although I was punctual, did a good job, and went above and beyond if necessary.

24. Mr. Ambrosio's harassment of me caused me immense stress, and I began regularly seeking mental health counseling with a therapist as a result.  I had suicidal thoughts.

25. Soon after Mr. Ambrosio became the Department Manager of Construction Management SPG, things begin to change. I met with Senior Vice President for Construction Milo Blair to complain about Mr. Ambrosio's racially motivated treatment of me.  Mr. Blair told me, in sum and substance, to "turn the other cheek" and ignore Mr. Ambrosio.

26. I also complained to Vincent Frankel (General Manager of Labor) and Nicole Leon (Director of EEO), to request a transfer away from Mr. Ambrosio.  I made several attempts to complain to CEO John McAvoy and to President Craig Ivey by leaving messages with their secretaries, but Mr. McAvoy and Mr. Ivey never returned my calls.

3

27. None of my attempts to transfer away from Mr. Ambrosio's supervision prevailed.

28. On or about February 3, 2015, I slipped and fell on a patch of ice near the ConEdison office at 30 Flatbush Avenue, in Brooklyn.

29. I immediately reported the fall to my supervisor, Carla Primus, who told me to assess how I felt the next day and call her.

30. The following morning, on February 4, 2015, I felt severe pain from the fall, but I came to work regardless because I was afraid to give Mr. Ambrosio any pretext to fire me. And I would be having foot surgery within the weeks to come, that would have me out of work for a few months.

31. I also had a scheduled an appointment that day with Vincent Frankel to discuss Mr. Ambrosio's harassment of me.

32. Before I began my 7:00 am shift on the morning of February 4, 2015, I called the on-duty supervisor in charge of scheduling work, Ricardo Rodriguez. I informed him that I had fallen the day before , and that I planned to ask my direct supervisor, Carla Primus, for permission to take 1 hour of vacation time at the end of my shift to see a doctor.

33. Mr. Rodriguez told me to remind Ms. Primus to file an incident report for my fall the previous day.

34. I called Ms. Primus for permission, and she orally approved my request to take 1 hour vacation at the end of my shift, from 2:30 pm to 3:30 pm.

35. Later that month, Mr. Ambrosio accused me of being absent without leave ("AWOL") for the 1 hour of vacation time I took on February 4, 2015, with Ms. Primus's approval.

4

36. He opened an internal investigation into the matter, with which I fully cooperated and answered all questions except one that I felt infringed on my medical privacy. Mr. Ambrosio forced employees to lie against me, so that I could lose my job.

37. On or about March 3, 2015, I obtained approval to take medical leave under the Family Medical Leave Act for surgery on my left foot and post-operation recovery.

38. Later in March 2015, I had surgery on my left foot.

39. Following surgery, I regularly checked in with my doctor and Defendant's doctor while on medical leave, to evaluate whether I was authorized to return to work duty.

40. On May 13, 2015, I had a scheduled appointment with Defendant's doctor to evaluate whether I was authorized to return to work duty. After seeing me, Defendant's doctor concluded that I was not fit to return to duty. He scheduled me for a follow-up evaluation on May 20, 2015.

41. As I was leaving Defendant's medical office, heavily sedated from medication I had taken and in pain, Mr. Ambrosio and two other white management-level employees (Sara Gherman and Stephanie Cus) cornered me as I was getting up from my seat to be clocked out from medical.

42. Mr. Ambrosio, Ms. Gherman, and Ms. Cus told me repeatedly to "follow them," without indicating where, or for what purpose.

43. I refused, stating that I was not cleared to return to work duty; that I was in pain and heavily medicated; and that I needed to return home to rest.

44. Mr. Ambrosio and the two managers followed me into the elevator and surrounded me, saying, in sum and substance, that it was in my interest to comply and follow them.

5

45. Fearing that they would not let me leave the building, I agreed to follow Mr. Ambrosio, Ms. Gherman, and Ms. Cus to a conference room.

46. When I saw that Shelia Bethea (my Human Resources rep) was waiting in the conference room along with my business agent, Jean Washington, I immediately left the room and called Defendant's ombudsman, requesting her presence at the meeting.

47. I feared that I would be terminated, and I wanted the ombudsman present because I had previously complained about Mr. Ambrosio's harassment to her.

48. Mr. Ambrosio and Ms. Bethea then informed me that I was terminated for (1) being AWOL for one hour on February 4, 2015; and (2) for my failure to cooperate with the investigation into this alleged AWOL.

49. Defendant's reasons for my termination were pretext for race discrimination and retaliation for having complained about Mr. Ambrosio's race discrimination against me.

50. A white, male employee of Defendant, Chris DeNoble, was forced to repay the Defendant for work hours for which he was paid, but which he did not actually work. To the best of my knowledge, Mr. DeNoble was not terminated or suspended for this infraction. Kevin Foley and Pascale Ambrosio were fully aware of this situation.

51. I lost my medical insurance within 10 days of being terminated, while I was still recovering from surgery.

52. **EEOC Charge:** I filed a charge of discrimination on the basis of race, sex, and retaliation with the EEOC on or about August 28, 2015.

53. I received a Right to Sue letter, which was dated May 12, 2016.

54. I filed a Complaint in this Court on January 19, 2017, approximately five months late. My tardiness was due to severe, chronic depression that I was suffering at that time.

6

55. After I was fired, I spiraled into a deep depression. All I could see was black. I experienced suicidal thoughts and was unable, on many days, to even get out of bed.

56. I had lost my medical insurance, so I could not afford to continue seeing a therapist or to seek psychiatric help.

57. Instead, I had regular psychotherapy appointments with a friend who is a social worker and counselor, who counseled me free of charge on a weekly basis.

58. During this period of depression, I was mentally unable to draft a Complaint and gather the required documentation to file in this Court.

59. When my period of depression began to abate, around January 2017, I was able to travel to this courthouse to find out more information about filing a lawsuit. I filed my discrimination Complaint in this Court as soon as I was able, shortly thereafter.

60. I have been unable to find employment since my termination from Defendant.

61. I continue to suffer from severe depression. Every other day, I wake up in tears.

62. I continue to have weekly counseling appointments with my friend who is a social worker and counselor.

63. The immense stress caused by Defendants' harassment and my termination have had detrimental physiological effects as well, including severe stomach pain, racing heartbeat, and headaches.

7

January 19, 2017

Kawana Howard

-v-

Consolidated Edison Company of New York, Inc.


The reason for the delay in processing my right to sue was I tirelessly tried to find an attorney, and was unlucky. I fell into a deep depression at which I was having suicidal thoughts, couldn't get out the bed because I felt like my whole world was snatched away from me and I didn't know how to function. I lost my mind for some time and needed to do soul searching, to find me and try to eliminate the crazy thoughts I was having. I realized that many looked up to me as a hero, and I had my grandmother to look after and my sickly aunts so killing myself was going to do more people harm than good. I had knee surgery June 29th, 2016 was home still on a search for a lawyer or someone that could be of assistance to me. I had no thoughts as to nothing because I just kept thinking why me, what did I do to deserve to have lost my job of over 13 years. I tried to understand and just as I was at a place of understanding, my grandmother passed away August 20th, 2016 and I was lost because she was what I was living for. Again, I was having suicidal thoughts and all I could see was black and what should I do to kill myself take pills, stab myself, crash my car I just didn't know and I had no one to really share my story with. I was seeing a therapist before I was fired because I suffer from depression and anxiety. Recently I was told that I need to get up and get my life back and follow through with what I started because winners don't quit, and that's when I came to the clerk's office to see what my options were.


Kawana S Howard

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC")

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | From: |
|---|---|
| Kawana Howard<br>214 St. Marks Avenue<br>Brooklyn, NY 11238 | New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, NY 10004 |

> ☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-03212 | Patrick Sanford, Federal Investigator | (212) 336-3677 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered Charge of Discrimination ("Charge"). It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this Charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this Charge.

☐ Less than 180 days have passed since the filing of this Charge, but I have determined that it is unlikely that the EEOC will be able to complete its investigation of this Charge within 180 days from the filing of this Charge.

☒ The EEOC is terminating its investigation of this Charge.

☐ The EEOC will continue to investigate this Charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the Charge was filed until 90 days after you receive notice that we have completed action on the Charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing its investigation of this Charge. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your Right to Sue based on the above-numbered Charge will be lost.

☐ The EEOC is continuing its investigation of your ADEA case. However, if 60 days have passed since the filing of this Charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the Right to Sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this Charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

MAY 1 2 2016
(Date Mailed)

Enclosures(s)

cc: **Respondent:**
Consolidated Edison Company of New York, Inc.
Attn: Lynelle Silvinski, Senior Staff Attorney – Law Department
4 Irving Place – Room 1805-S
New York, NY 10003
(212) 460-3068



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Patrick Sanford
Federal Investigator
Phone (212) 336-3677
Fax (212) 336-3624

September 24, 2015

Via U.S. Mail

Kawana S. Howard
214 St. Marks Avenue
Brooklyn, NY 11238

Re:   *Kawana Howard v. Consolidated Edison Company of New York, Inc.*
      *EEOC Charge No. : 520-2015-03212*

Dear Ms. Howard:

The U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") has received the Charge of Discrimination ("Charge) that you have filed against Consolidated Edison Company of New York, Inc. ("Respondent"). Based upon the information you have submitted, the EEOC has decided to continue its investigation of your allegations of employment discrimination.

In order to move forward with our investigation, the Commission has mailed a copy of your Charge to Respondent and we have requested that it submit a written response ("Position Statement") to your allegations of employment discrimination to the EEOC.

Once the Position Statement has been received and analyzed by the Commission, a copy of the Position Statement will be mailed to you by the EEOC. This will give you the opportunity to see what information/documents the Respondent submitted to the EEOC in response to your Charge. The Commission will then give you an opportunity to submit a rebuttal to Respondent's Position Statement to the EEOC.

If you have not received a copy of Respondent's Position Statement from the Commission by **November 25, 2015**, please contact **Enforcement Supervisor, Alvin Mallette** regarding the status of the EEOC's investigation of your Charge.

Mr. Mallette's direct phone number **(212) 336-3675**.

Sincerely,

Patrick Sanford
Federal Investigator

Esther Gutierrez
212 - 336 - 3754

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2015-03212 |

| New York State Division of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Kawana S. Howard | 718-856-2371 | 07-08-75 |

| Street Address | City, State and ZIP Code |
|---|---|
| 214 St. Marks Avenue, Brooklyn, NY 11238 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Consolidated Edison Company of New York, Inc. | 500+ | 212-460-3068 |

| Street Address | City, State and ZIP Code |
|---|---|
| Attn: Lynelle Silvinski, Senior Attorney, 4 Irving Place, Room 1800-S, New York, NY 10003-0987 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| COPY | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-15-14 | 05-13-15 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

||||||||||||||||||||||||||||||||||||||||||||||||||||

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

AUG 28 2015

DATE RECEIVED

## See Attached Page
## On Back

COPY

||||||||||||||||||||||||||||||||||||||||||||||||||||

**COPY OF CHARGE FOR YOUR RECORDS**

| ...local Agency, if any. I ...mber and I will ...accordance with their ...and correct. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| ...ched | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>X See attached<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| ...Signature | |



**Over** ↓

STATE OF NEW YORK     )
                       )    ss.:
COUNTY OF NEW YORK  )

      KAWANA HOWARD being duly sworn, says:

1.     I am a 36 year old woman and a resident of Brooklyn, New York.

2.     I have a 2004 Associate's Degree in Liberal Arts from Kingsborough Community College and a 2007 Bachelor's Degree in Legal Studies from John Jay College of Criminal Justice. In May 2012, I received a Master's Degree in Organizational Leadership from Mercy College.

3.     I started working at Con Edison as a Customer Field Representative, or meter reader, in 2002. I am currently one of eight Inspectors in Steam Operations. The other seven Inspectors are men.

4.     While employed at Con Edison, I have faced hostility from my male supervisors and co-workers because I am a woman.

5.     For instance, in January 2006, I was promoted to the management position of Investigator in Con Edison's Law Department. When employees move from a union position to management, we are required to attend a series of trainings, at the end of which we must make a "TEAM" presentation. Completion of the presentation triggers a salary increase. My supervisor in the Law Department, Wayne Carroll, would not allow me to make my TEAM presentation after I had completed the prerequisite trainings, telling me he wanted me to wait 6 months. Meanwhile, Mr. Carroll allowed a male Investigator who had been promoted to Investigator at the same time I was to make his "TEAM" presentation on time.

6.     In or about July 2006, I transferred to the non-management position of Administrative

1

Assistant in Construction Management, and took a corresponding decrease in pay, due to Mr. Carroll's disparate scrutiny and criticism of me as compared to my counterpart male Investigator.

7.    In Construction Management, my General Manager, Mr. Anthony Aldonafi, supported by my Department Manager, Gary Garromone, refused to allow me to take the test to become an Inspector.  This delayed my becoming an Inspector by approximately 1.5 years and also required me to leave Construction Management for the less desirable working environment in Steam Operations (I did not need Mr. Aldonfi's permission to take the Inspector test for Steam). Since becoming an Inspector in Steam Operations in 2008, I have repeatedly attempted, without success, to transfer back to Construction Management.

8.    Con Edison has also denied me promotional opportunities that it gave to equally or less-qualified men.

9.    Specifically, in September 2007, before I became an Inspector, I applied for a Customer Operations Supervisor position (07-470), which supervises "meter readers."   I was informed that I was not selected for an interview because I did not "demonstrate the qualification, education and/or experience that were required with the position detail." However, I exceeded the objective requirements stated in the job posting.

10.    Since becoming an Inspector, I have applied for at least four (4) Chief Construction Inspector (CCI) positions that supervise Inspectors, and several Specialist positions that supervise clerical staff.  In each instance, I have been denied the promotion, with the positions often going to individuals with lesser qualifications and seniority than me, usually men.

2

11.    Additionally, while employed at Con Edison, I have been unfairly and excessively disciplined which has made me ineligible me for promotions for which I otherwise qualify.

12.    For example, in 2010, I applied for a Specialist position where the hiring manager, Hugh Pate, knew me from when I had been assigned to Construction Management and who had indicated that he wanted me to work for him. While my application was pending, my manager in Steam Operations, Eddie Eng, gave me a disciplinary write-up that disqualified me for the Specialist position. The write-up related to my allegedly having cursed and made insubordinate remarks about Gary Elgort, an engineer in Construction Management, while speaking on the telephone to the chairman of my union, Emilio Fredrick. These allegations were inaccurately reported to Mr. Eng by Mr. Elgort. Both Mr. Fredrick, and Tony Chirallie, a third-party witness to my telephone conversation with Mr. Fredrick, refuted Mr. Elgort's account of what had occurred. Mr. Eng still issued the disciplinary write-up. I filed a union grievance and the write-up was eventually modified to a verbal warning. But by that time I had already been denied the Specialist promotion.

13.    Additionally, Mr. Elgort, who made the allegations resulting in my being written up, had a history of inappropriate conduct including staring at me for prolonged periods of time, waiting outside the women's locker room while I was inside until I would come out, and walking past my workstation with unnecessary and excessive frequency.

14.    I reported Mr. Elgort's conduct and Mr. Eng's disciplinary write-up to both Con Edison's Equal Employment Opportunity (EEO) office and the company ombudsman, Peter Hubert. The EEO office responded that it was not an EEO issue and took no steps to investigate. I never heard back from Mr. Yuber who later passed away in March of

3

2012.

15.    As a further example of disparate discipline, in December 2011, I was suspended for two weeks without pay. This resulted from an investigation conducted by my manager, Eddy Eng, in connection with my having ridden in an independent contractor's vehicle when the contractor dropped me off-site for 45 minutes for my lunch and a break. These events occurred in October 2011 but I was not suspended until December 2011. It is unusual for several months to elapse between a Con Edison employee's alleged misconduct and the disciplinary action. Moreover, there is no rule or policy prohibiting a Con Edison employee from riding in a contractor's vehicle. It is frequently done by male Inspectors without comment, investigation or discipline. I have grieved the suspension and am currently waiting for an arbitration to be scheduled. Meanwhile, the suspension disqualifies me for any promotion and makes it more difficult for me to obtain a transfer, which I am still seeking, back to Construction Management.

16.    Finally, in May 2012, a supervisor in Steam Operations, David Nieves, reported that he had observed me leaving work early on May 4, 2012 when I was actually going to inspect a job site. I was required to participate in an investigatory interview conducted by Steam Operations supervisors Eddy Sleem and Mohammad Momen. I have not yet been informed of the findings of the investigation. If I am disciplined again, I will be eligible for termination under Con Edison's progressive discipline policy.

17.    Meanwhile, men employed in Steam Operations frequently leave early or disappear during the day and are not reported, investigated or disciplined for this conduct.

18.    I have reported the failure to promote and unwarranted, excessive discipline described above to Con Edison's Equal Employment Opportunity (EEO) office but to no effect. In

4

2007 or 2008 I spoke with Gretchen King in EEO. Then, in 2010, myself and several other women who work in the field met with EEO Director Christine Osuji. I did not hear anything further from EEO after either of these meetings and am not aware of any investigative or corrective action that was taken by the company. In June of 2012, I met again with Ms. Osuji. She acknowledged that less qualified people had been selected for promotion over me. She also indicated that she would inquire about a waiver for my December 2011 discipline to allow me to still apply for promotions. But to date, I have not heard anything further from EEO.

19.    In recent years, Con Edison's EEO office periodically holds meetings for women employees of the company to express their workplace concerns, but this is solely a pacifying measure. I have attended several of these meetings and to my knowledge, no meaningful investigation or change results from them.

KAWANA HOWARD

Sworn to before me this
3rd day of July, 2012

CLARE NORINS
Notary Public, State of New York
No. 02NO6131975
Qualified in Kings County
Commission Expires August 22, 2013

5

J20 - 2015 - 03212

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## New York District Office – INTAKE
### 33 Whitehall Street, 5th Floor
### New York, NY 10004

This agency enforces the laws against discrimination in employment based on **race, color, religion, national origin, age, sex, disability, or genetic information.** The event you are complaining about must have occurred **within a maximum of 300 days** of the filing of a charge. Our jurisdiction covers public and private employers with **15 or more employees (20 or more employees for age complaints),** labor unions, and employment agencies located in New York State south of Albany. If you work for the **Federal Government,** you must first contact your agency's Equal Employment Office in order to file a complaint.

To better serve your interest and avoid delays in processing your complaint, please answer the following questions:

NAME: Kawana S. Howard

TEL. NO. WHERE WE CAN CONTACT YOU: 646-772-6642 / 718 856 9373

**A. What was the Latest or Most Recent Date of discrimination which you are alleging?**

5/13/15

**B. Does your employer have fewer than 15 employees (20 for age complaints)?**

Yes____ No ✓ How many employees? _____

**C. Have you filed a complaint with another agency (such as the New York State Division of Human Rights or the New York City Commission on Human Rights?**

Yes____ ✓ No ____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

**JUL 2 9 2015**

**DATE RECEIVED**

**If Yes, Name of agency and date of filing:**

Us Attorney General

**D. Do you work for a Federal Government Agency (Such as the U.S. Postal Service?**

Yes____ No ✓

**\*\*\*IF YOU ANSWERED YES TO ANY OF THE ABOVE QUESTIONS, PLEASE SEE THE RECEPTIONIST, AS THE EEOC MAY NOT HAVE JURISDICTION OVER YOUR CLAIMS**

If you answered NO to the above questions, please fill out the questionnaire and return it to the receptionist, who will give you further instructions about our procedures.

J20-2015-03212

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Howard    First Name: Kawana    MI: S

Street or Mailing Address: 214 St. Marks Ave    Apt or Unit #:

City: Brooklyn    County: USA    State: NY    Zip: 11238

Phone Numbers: Home: (718) 856-9373    Work: (   )

Cell: (646) 772-6642    Email Address: kwana75@msn.com

Date of Birth: 7-8-75    Sex: ☐ Male ☑ Female    Do You Have a Disability? ☐ Yes ☐ No

Please answer each of the next three questions.    i. Are you Hispanic or Latino? ☐ Yes ☐ No

ii. What is your Race?    Please choose all that apply. ☐ American Indian or Alaskan Native  ☐ Asian  ☐ White
☑ Black or African American  ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)?

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Ronald Howard    Relationship: Father

Address: 2410 Clarendon Rd    City: Brooklyn    State: NY    Zip Code: 11226

Home Phone: (718) 856-9373    Other Phone: (718) 451-6737

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer  ☐ Union  ☐ Employment Agency  ☐ Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here __ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Consolidated Edison

Address: 4 Irving Pl    County: USA

City: New York    State: NY    Zip: 10009    Phone: (   )

Type of Business: Energy    Job Location if different from Org. Address:

Human Resources Director or Owner Name:    Phone: (   )

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15  ☐ 15 – 100  ☐ 101 – 200  ☐ 201 – 500  ☑ More than 500

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

JUL 29 2015

DATE RECEIVED

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No

Date Hired: 8-19-2002    Job Title At Hire: Customer Field Representative

Pay Rate When Hired: $12.87    Last or Current Pay Rate: $38.95

Job Title at Time of Alleged Discrimination: Inspector    Date Quit/Discharged: May 13, 2015

Name and Title of Immediate Supervisor: Carla Primus

1

If Job Applicant, Date You Applied for Job _____ Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☐ Sex ☐ Age ☐ Disability ☐ National Origin ☐ Religion ☑ Retaliation ☐ Pregnancy ☑ Color (typically a difference in skin shade within the same race) ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing  ii. family medical history  iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _Department Manager, General Manager, Vice President are white_

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain): _I have been dealing with discrimination since 20_

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: _5/13/15_    Action: _Terminated. Claimed I was insubordinate, AWOL neither was true. Had previous suspension 7/2014 placed on all inclusive + k._

Name and Title of Person(s) Responsible: _Pascale Ambrosio - Department Manager_ 4 wk susp

B. Date: _7/2014_    Action: _Suspension - all inclusive final warning 5/22/14 - Claims I made threats to an employee, had witnesses that lied on me_

Name and Title of Person(s) Responsible _Pascale Ambrosio - Department Manager_

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

_Since it became aware I was apart of a class action suit I have been targeted, but prior to that when applying for jobs I was always denied + even being qualified._

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

_One of my witnesses Vincent Schembari (Inspector)_

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, sex, age, national origin, religion or disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. _Cecelia Borchending - Race, age_ | | _Inspector_ | |
| B. _Claudine Campbell-Whitehead - Race_ | | _Manager_ | |

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| Full Name | Race, sex, age, national origin, religion or disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Cecilia Bowbendirg - Race, age | | Inspector | written up, Suspended for doing her job and having a questioning ath fu |
| B. Claudine Campbell-Whitehead - Race | | Manager - Denied a job that she was already doing for 2 years prior | |

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| Full Name | Race, sex, age, national origin, religion or disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. | | | |
| B. | | | |

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

**9.  Please check all that apply:**
  ☐ Yes, I have a disability
  ☐ I do not have a disability now but I did have one
  ☐ No disability but the organization treats me as if I am disabled

**10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).**

_____
_____

**11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
  ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____
_____

**12.  Did you ask your employer for any changes or assistance to do your job because of your disability?**
  ☐ Yes ☐ No
If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____
_____

How did your employer respond to your request? _____

_____

**13. Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. Cecelia Borderding | Inspector | 917 559 2086/ 917 577 6189 | She will |

Collaborate my Story - give you

B. Vincent Schembavi    917 653 2999  Inspector - He will advise
that I have been harassed and discriminated against

**14. Have you filed a charge previously on this matter with the EEOC or another agency?**  ☑ Yes  ☐ No

**15. If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____

US Attorney General    2010 / Company EEOC Various dates

**16. Have you sought help about this situation from a union, an attorney, or any other source?**  ☑ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

_____

_____

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

**BOX 1**  ___ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2**  ✓ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____          7/29/15
              Signature                                              Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 USC § 2000e-5(b), 29 USC § 211, 29 USC § 626, 42 USC §12117(a), 42 USC §2000ff-6.
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.  Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4

**EEOC Supporting Statement – Title VII & ADEA**

Kawana S Howard

214 St Marks Ave

Brooklyn, NY 11238

(718) 856-9373 / (718) 856-2371 = Home

(646)772-6642 = Cell

1.  **Respondent's (Employer's) Business & Your Job Description & Duties:**

2.  **Charging Party's (Your) relevant work history with this Company:**

3.  **Personal Harm:**

4.  **Respondent's (Employer's) reasons:**

5.  **Charging Party's (Your) rational basis for believing there was discrimination:**

6.  **Comparator's names, titles and how similarly situated:**

7.  **Witness identification:**

8.  **Class harm (Optional: Use only when applicable to the allegation raised in the charge):**

9.  **Other relevant information:**

10. **Copy of Pay Stub**

I swear or affirm that under the penalty of perjury, that I read the above statement, and that it is true and correct to the best of my knowledge, information and belief.

Kawana S Howard                                                      Date

1.  <u>**Respondent's (Employer's) Business & Your Job Description & Duties:**</u>

Consolidated Edison, Inc. commonly known as Con Edison or Con Ed, is a company that provides a wide range of energy related products and services to customers, providing Electric, Gas and Steam to customers in the NY Metro area and Westchester. The company has over 14,000 employees both management and union. The company promoted diversity, but it doesn't exist.The department I was in before my termination was Construction Management Special Projects Group, where they are in charge of inspecting, monitoring and documenting the progress of construction jobs.  Also issuing payments to contractors for work completed, and contractor over site for the stray voltage safety program as well as other programs. The company is responsible because it has all this people in place to help, but no one ssmes to help you but rather lead you to a dead end. But for this particular situation Pascale Ambrosio Department Manager is the person responsible for my termination, along with Mary Kelly Vice President of Construction Management and Tom Poirier General Manager of Construction Management. I never had any real hands on with any of these individuals, except during meetings due to the chain of command where I reported to a direct supervisor (Carla Primus) and or the manager(Sara Gherman).

2.  <u>**Charging Party's (Your) relevant work history with this company:**</u>

I started Con Edison August 19, 2002 as a Customer Field Representative where my sole responsibility was gaining access into the premises of our customer's homes and businesses to read the water and electric meters. November 2004 I became a clerk in Construction Management where I did data entry, answering phones, interacting with customers and upper management. January 2006 - July 2006 I went to the law department as an Investigator where I investigated claims against the company for potential lawsuits. Here I had my first test of racism, but because I was new in the company didn't want to create any waves, so I returned to my old department Construction Management. From July 2006 - December 2008 I returned to Construction Management, where I went up the title track from clerk to office assistant and administrative assistant. During this time, I was discriminated against when I applied for numerous management positions but was always advised that someone with more experience received the job, when I knew I was clearly the most qualified candidate. During this time was when they found the management employees were taking kick backs from the contractors. The same managers that had denied me a job promotion. I was always informed that I could not become an Inspector in Construction Management by former employee and General Manager Tony Aldonfi, hence my reason for going to Steam Operations. I fought these decisions, but nothing was ever founded within the company's EEO office. December 2008 - August 2012 I went to Steam operations as an Inspector where I was responsible for overseeing contractors working on Steam structures, drawing looseleafs of  the pipe work installed, as well as what was removed. Had some issues here, but the discrimination in this department was visible and many were unhappy, but no one to talk to in regards to this. I was an active shop steward while in this department, where  tried to bring some solutions to the problems that existed but was looked upon more a trouble maker for making these problems aware to others that were unaware. I was told if i wasn't a shop steward i would go further in my carrer but i care too much. In August 2012 I requested a transfer to Construction Management Special Projects Group, where I was until my termination May 13, 2015 while I was out on FMLA for foot surgery I had on March 13, 2015. When I first arrived things were good, though I had some minor problems with co workers. I had come to this group

due to an agreement between myself, Claudine Campbell-Whitehead(Manager at the time before they outted her) and Tom Porieir General Manager. Once Pascale came on board, there was nothing but issues. He tried to turn the union members against Claudine by saying slick things like she was responsible for the overtime being cut, shifting of the workload when it was his call as the Department Manager. He is very manipulative, sneaky among other things and not very truthful. I hold an Associate Degree from Kingsborough College, Bachelors Degree in Legal Studies from John Jay College and Masters Degree in Organizational Leadership from Mercy College.

3. <u>Personal Harm:</u>

I have faced discrimination on varies occasions during my time in the company, and have contacted your organization on many occasions but for some strange reason never went through because I was more scared of not having a job, being retaliated against and look where I am presently jobless. The latest of events started May 22, 2014 during a medical visit to occupational health (company medical office located in the buildings headquarters at 4 Irving Pl) when I was called in for being out sick due to back problems, which started on May 20, 2014. During this visit I faced sexual harassment by one of the doctors who was to evaluate me. Upon arrival to this office I requested to see a specific person Dr. D (not sure of his full and correct name) who is well aware of my history of chronic back pain from previous injuries on the job, but somehow was given this gentleman Dr. Juene, who was accompanied by another male. He asked if the gentleman (Dr Haughton) could sit in and listen during my evaluation, at which I agreed but advised that the door had to remain halfway open being it would be two men in the room with myself. Questions was asked by the Dr Juene and I asked questions of the Dr.Juene which he became offended by, but I was clearly asking what was his medical specialty which i am entitled to ask. After his questions and going over the answers to the questions, I was asked to disrobe, and I was offended and in shock. Never had I ever been asked to disrobe during any visits for my back, and here I have this man asking me to get undressed so that he could evaluate my back. I honestly didn't like the way he looked to me, and the excitement in his eyes when he asked me to disrobe was quite disturbing. I also have a witness who went through the same experience at another time with this same Dr. Juene and she was actually touched by him but scared to tell anyone becasue she was scared of retaliation. I declined and the evaluation ended at that point. This started a big situation where Senior Specialist Christine Lee, former employee of Con Edison had sent an email to my department that I refused to be examined and walked out of medical, all of which was untrue. I had been scanned out by the young lady who was sitting at the desk.This sparked a department investigation by the department manager Pascale Ambrosio (not sure why this turned into an investigation in the first place or even why he was involved and not the supervisor or manager) as there was claims I made a threat that I would throw a chair and wait for Ms Lee outside. As a company employee I was fully aware of the policies on work place violence, and would never threaten another human being's life, because I would not want anyone to do that to me. I was sent back to medical by my supervisor at the time Quentin Snagg that day, whom should have been the one to contact medical and take care of the situation, but he directed me. I went back to medical with the shop steward who went to medical earlier in the day with me to clear up the misunderstanding but it was a waste of time because nothing was accomplished though much happened during this time but I had an appointment uptown that I needed to make so I had to leave with the situation unresolved. During this time my shop steward James Bambina was acting in his capacity, he was loud but taking to them, was going back and forth. Veronica Jackson (worked directly for Dr John Clarke and didn't supervise anyone) had come out spoke to me, stated she would speak with John Clarke to get me an appoinmtent since Dr Juene stated i need to

speak with an administrator. I returned to work the next day and was sent home for the fact I was not cleared for duty. I didn't go home but went back to Irving Pl to speak with my shop steward James, and let him know what had transpired, Upon arrival i met Vice President of the Union (UWUA Local 1-2) James Shilitto and Michaelt Stanix (Manager of Labor Relations). They were trying to get me a medical appointment, my supervisor was also whom succeeded but the appointment had been canceled. At this time i contacted the CEO john McAvoy, who didn't call me back and being it was a holiday weekend had one of the V's Mary Adamo (former employee) of contact me and make an appointment for me that Tuesday May 27th, 2014. I went to the appointment and no problems was cleared for duty by the Dr (name unknow) i saw. After what they claim to be an investigation, I was suspended for two weeks and placed on an all-inclusive final warning, at which the union had filed a grievance and an arbitration hearing was set for August. There were many lies that were told, but the union lawyer was horrible(I will pursue charges against the union for not protecting me properly). One example of a lie was the young lady stated she heard me tell the Dr he was not my Dr, but the office was crowded, tv playing, people standing on the walls and sitting in the chairs, her job was to swipe people in and out, and I was way across the way around the corner in a room where the door was slightly open and the shop steward who was outside could not hear what was being said entirely but she could. The arbitrator Bonnie Winstock agreed with the company and upheld my two-week termination and all inclusive final warning (which entails if I do anything they deem wrong I would be terminated) making all this false claims about my person when she clearly knows nothing about me(will submit the arbitration ruling). This was all the workings of Pascale Ambrosio who also tried to get another person of color fired, but it backfired on him so I was open season for him to harass me, retaliate against me and discriminate against me. I spoke on some issues where i felt atht it was a conflict of issue that Pascale father was a contractor utilized by the comapny, and him being the one that writes the contract on items that they bid on was a conflict. This can cause a person to have a dislike for you, and I am also a strong minded black woman who is willing to learn everything i need to move forward in my career. This situation did not warrant an all inclusive or two-week suspension at all, but he wanted me to be jobless along with his counterparts from upper management Mary and Tom. I am that person that sees things that are going wrong and like to ask questions, because Con Ed has these models where we need to have a questioning mindset but it backfires on you, communicate openly, but its only for show. During a meeting held by Milo Blair (black man) Senior Vice President, I asked questions that he could not answer and danced around such as why do we have all the ism's at the job and everyone is aware but no one does anything to prevent this. Mary Kelley (white woman) was there and from my understanding was not fond of my questions. I also went to Milo to seek a transfer being he is the man of power and can make it happen, but he did nothing to help me. So much more to the puzzle but I have had a target on my back since I went to the Attorney Generals office to lodge a formal complaint. Also, I had a supervisor (white man) tell me if I wasn't apart of the union (shop steward) I could go much further in my career but I care too much basically.

4. **Respondent's (Employer's) reasons:**

According to the termination summary I received they said that I was absent with out leave on February 4th, 2015, failed to cooperate with investigation, insubordination and violation of standard of business conducts without quoting the section.

5. **Charging Party's (Your) rational basis for believing there was discrimination:**

I feel that I was discriminated, harassed and retaliated against on the basis of my race and that I am very assertive, strong minded and very questionable to certain situations that may occur which is unfavorable. As a female working in what is considered a non traditional role it is looked upon that a womans place should be in the office. I have applied for numerous jobs in my time at Con Edison and was turned down for white males, who had less experience and lacked in the education. During this current situaion there has been an instance where a white male employee actually violated the workplace violence policy by grabbing a females arm leaving a mark that was visible to the eye. He was only demoted from having people report to him. Also have supervisors that have reported working overtime but never worked, violating the policy on accurate time reporting. The supervisor was required to pay the money back. I have filed a class action suit with the US Attorney General and the company is fully aware, so i feel that I am being retaliated against for bring forth claims against my employer. All of the parties involved with me have been targeted, suspended once the comapny became aware. Also sexual harrased by Dr Juene wanting me to get undressed and EEO not finding anything wrong, and also during my time in Steam where I had this supervisor (retired) waiting for me outside the womans locker room, and watching me during the day(witnesses actually witnessed this as well) and no one did anything about this.

6. **Comparators names, titles, and how similarly situated:**

Michael Garick (white male)-Senior Specialist who had put his hands on a female employee by grabbing her and leaving his hand print on her arm. Also making it known to her that she would not be able to work for anyone else other than him, which made her uncomfortable and in tears. The only action taken against him was losing his direct reports and a two-week suspension. He was in clear violation of the company policies and procedures in regards to violence in the workplace, and being it was settled in house it was not made mention to the PSC nor the stockholders. I did not violate any policies, no one was harmed and I received a two-week suspension and all inclusive final warning, while this gentleman was given a slap on the wrist and he left a mark on the persons body.

Chris Denoble (white male) Good friends with the man behind my termination Pascale Ambrsio - Chief Construction Inspector stole company time by putting in for overtime he claimed to have worked, while he was home. He was advised that he had to pay the money back and he was in violation of the company's policies and procedures in regards to time reporting. Another in house situation that was not made publically aware to anyone. I had time approved by supervisors and they claim I took time without permission, and was terminated due to the basis of the all inclusive final warning while this gentleman was in clear violation and only requested to pay the time back.

There are many others just need to get more information on them as well to bring forth.

7. <u>Witness Identification</u>:

Vincent Schembari - Construction Inspector (917)653-2999

Ceceila Borcherding - Construction Inspector (917)577-6189/(917)559-2086

Prudence Foster - Construction Inspector (646) 246-4003

Claudine Campbell-Whitehead – Manager (

Chris Jones – Steam Mechanic B (347) 325-0174

Amanda Stinson – Mechanic (718)714-8795

8. <u>Class harm</u>:

If I could turn this into a class harm, many of the witnesses from above and more can collaborate my story and add more to the retaliation, harassment and discrimination that is happening by said employer Con Edison. Many of us have went through the proper channels at the job but nothing is never founded according to the company's EEO office. Each person has their own information that can be offered, and willing to cooperate. Many are afraid of the backlash, hence reasons why many never presented their cases prior.

9. <u>Other relevant information</u>:

I am apart of a class action against the employer that is being handled by the US Attorney General office, and it seems that ever since it has become known I have been a target. I was always a shop steward, at which I was a highly visible and vocal participant and I opposed discrimination, harassment and retaliation from said

employer. I had many one on one conversations with some of the top executives, which I also think played a major part in that many looked as if I was stepping on their toes. As a single, young, educated, black woman I knew how important my job was to me and took all precautions to make sure I was out of the light but that didn't work since I already had the target on my back. I am a very nervous individual, who doesn't like confrontation and also part of the reasons why I never followed through with the attempts I made contacting your office. I was totally scared of the backlash, and what would happen to me at the job. This situation currently has me weak and in constant tears because I swear it wasn't deserving and a very harsh punishment.